437 S.E.2d 749

**STATE of West Virginia ex rel. ALL-STATE INSURANCE COMPANY, A Corporation, Relator,**

v.

**Honorable Mark A. KARL, Judge of the Circuit Court of Marshall County; Jamie Lynn Brooks; James E. Brooks; and Naomi Carr, Respondents.**

**No. 21818.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1993.

Decided Oct. 29, 1993.

Walter M. Jones, III, Paul B. Weiss, Martin & Seibert, Martinsburg, for relator.

Larry W. Blalock, Lucinda L. Fluharty, Jackson & Kelly, New Martinsville, for respondents Jamie Lynn Brooks and James E. Brooks.

Robert P. Fitzsimmons, Fitzsimmons & Associates, Wheeling, G. Charles Hughes, Moundsville, for respondent Naomi Carr.

MILLER, Justice:

We granted this original proceeding in prohibition in order to resolve certain procedural issues with regard to uninsured and underinsured motorist coverage. The basic facts are not in dispute, and the case involves critical legal questions that will substantially impact the underlying civil litigation. Thus, the issues fall within the prohibition standard set out in Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979),[1] which permits an original prohibition proceeding in this Court to correct substantial legal errors where the facts are undisputed and resolution of the errors is critical to the proper disposition of the case, thereby conserving costs to the parties and economizing judicial resources.

I.

The relator, Allstate Insurance Company (Allstate), issued an automobile insurance policy with uninsured and underinsured motorist coverage to David A. Carr. The policy also covered Naomi J. Carr, who was his mother, as a member of his household. Ms. Carr was injured while walking across a pub-

---

1. Syllabus Point 1 of *Hinkle* states:

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

lic street in Moundsville.[2] She was struck by an automobile operated by Jamie Lynn Brooks and owned by James E. Brooks, her father. The Brooks policy provided for liability coverage in the amount of $250,000 with State Automobile Mutual Insurance Company (State Auto).

The claim could not be settled, and Ms. Carr filed suit against the Brookses in the Circuit Court of Marshall County in February of 1993. A copy of the suit papers was also sent to Allstate pursuant to the provisions of W.Va.Code, 33–6–31(d) (1988). This section requires an insured who sues for damages arising from a motor vehicle accident and who desires to recover under the uninsured or underinsured provisions of their insurance policy to "cause a copy of the summons and a copy of the complaint to be served upon the insurance company ... in the manner prescribed by law[.]"[3]

After receipt of the complaint, Allstate filed an answer which raised several defenses on behalf of the Brookses. It also issued interrogatories against Ms. Carr and requests for production of documents. An answer was also filed by State Auto, the liability carrier for the Brookses. State Auto also filed interrogatories and requests for production of documents. A number of the requests by State Auto overlapped with Allstate's requests.[4]

Ms. Carr's attorneys then moved to restrict the participation by both Allstate and State Auto on behalf of the Brookses. The trial court, after hearing arguments and receiving briefs, by its June 11, 1993 order determined that a unified defense was warranted and required Allstate and State Auto to file a single answer on behalf of the Brookses. It required Allstate, the underinsured motorist carrier, to elect whether it would intervene in the case in its own right or merely in the name of the Brookses.

The trial court also ruled that the plaintiff need not answer Allstate's discovery requests and that State Auto's discovery would control. It also granted Ms. Carr's motion to strike certain defenses asserted by Allstate in its answer on behalf of the Brookses, finding those defenses to be without merit.[5] Following the entry of this order, Allstate filed a petition for a writ of prohibition with this Court claiming statutory and due process violations.

## II.

■ Before we address the relator's claims, it is useful to outline some of the salient features of our uninsured and underinsured insurance law. Its statutory provisions are contained in W.Va.Code, 33–6–31. We recognized in *State Automobile Mutual Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), that the purpose of our statutory requirement that insurers offer uninsured and underinsured protection in motor vehicle liability policies is to protect an

---

**2.** The parties do not dispute that Ms. Carr, as a pedestrian, was covered as an additional insured as a member of the household under her son's automobile liability policy, which contained underinsured motorist coverage.

**3.** The complete text of W.Va.Code, 33–6–31(d), states:

"Any insured intending to rely on the coverage required by subsection (b) of this section [providing for uninsured and underinsured motorist coverage] shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.

"Nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding."

This provision applies only where the insured files suit against the tortfeasor.

**4.** State Auto's discovery requests covered approximately 260 items.

**5.** The defenses asserted by Allstate included a lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and insufficiency of service of process. We decline to address the validity of this ruling in light of our holding that the trial court was correct in ruling that a single answer on behalf of the Brookses was proper.

injured insured when the defendant tortfeasor has either no liability insurance coverage (uninsured) or has inadequate liability coverage (underinsured). We summarized the statutory provisions contained in W.Va.Code, 33–6–31(b), in Syllabus Point 4 of *Youler:*

"*W.Va.Code,* 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits."

*See also Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990).

 Recently, in Syllabus Point 1 of *Postlethwait v. Boston Old Colony Insurance Co.,* 189 W.Va. 532, 432 S.E.2d 802 (1993), we outlined the procedural mechanism under W.Va.Code, 33–6–31(d), that a plaintiff must follow to give an uninsured or underinsured carrier notice of the litigation:

"W.Va.Code, 33–6–31(d) (1988), outlines certain rights given to an uninsured/underinsured insurance carrier where a tortfeasor who is uninsured or underinsured is sued by a plaintiff. It requires that a copy of the complaint be served upon the insurance carrier. It also allows the carrier 'the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured vehicle or in its own name.'"

### III.

What is at issue here is the proper relationship between the tortfeasor's liability carrier and the plaintiff's own insurance carrier, who provides the underinsured motorist coverage, when litigation arises. We are not cited nor have we found a published opinion that deals with the issues raised in this case.[6]

The parties acknowledge that each carrier has an interest in the case through its respective exposure to an adverse award of damages.[7] Under our statutory scheme, the role of an underinsured carrier is analogous to that of a secondary or excess carrier.[8]

---

6. Allstate submits an unpublished opinion by the Intermediate Court of Appeals of Tennessee, *Fyke v. Clark,* 1989 WL 146736 (Tenn.App.). It would appear in Tennessee that an unpublished opinion "has no precedential value except to the parties in the case[.]" *Patton v. McHone,* 822 S.W.2d 608, 615 n. 10 (Tenn.App.1991). If it did have precedential value in Tennessee, we would have to determine under principles of comity whether we could give it precedential value. Even if we were to consider this opinion, it is clear that the issue raised therein was only whether the trial court erred in precluding the liability insurance carrier and the underinsured carrier from conducting a joint defense when they made the following representation:

"that there would be no promotion of any interest, separate or additional from the named defendant's interest, nor attempt at any separate or additional cross-examination of witnesses, but also it was made clear that the named defendant expressly consented and agreed that counsel for the underinsured motorist carrier work together with her attorney in presenting the defense on her behalf and in her name before the jury." 1989 WL 146736 at 2.

For the reasons set out in Part III, *infra,* we have approved such an arrangement. *See* Syllabus Point 9, *supra.*

7. Where the tortfeasor has no liability coverage, the plaintiff's uninsured motorist carrier would be the only insurance carrier exposed to the plaintiff's liability claim. In most instances, the uninsured carrier would then control the defense. We recognize that W.Va.Code, 33–6–31(d), contains this proviso: "Nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding." *See generally* 2 Widiss, *Uninsured and Underinsured Motorist Coverage* § 28.14 (1992). Certainly, if the uninsured carrier is acting in bad faith in its defense of the tortfeasor, the tortfeasor's attorney may seek to control the defense.

8. The role of an excess carrier is summarized in Section 4682 of 7C J. Appleman, *Insurance Law and Practice* (1979 & Supp.1992):

"Excess insurance is routinely written in the insurance industry with the expectation that the primary insurer will conduct all of the

We dealt with a related issue in *Allstate Insurance Co. v. State Automobile Mutual Insurance Co.*, 178 W.Va. 704, 364 S.E.2d 30 (1987), where State Auto insured a vehicle that the owner allowed a friend to operate. In the course of operating the vehicle, the friend injured the plaintiff. The friend also had insurance through Allstate that provided coverage if its insured operated another vehicle. We found that both coverages applied, but concluded that the "bright-line rule of law [is] that the primary obligation to defend and indemnify follows the automobile, rather than the driver[.]" 178 W.Va. at 707, 364 S.E.2d at 33.[9]

In the underinsured motorist context, our cases suggest that the primary duty to defend rests with the tortfeasor's liability carrier. Although we have not had occasion to express this precise point in a Syllabus, it is implicit in *Youler, supra,* and the cases that followed it that this principle was at the heart of the discussion. *See generally* Annot., 24 A.L.R.4th 13 (1983). The primary duty of the tortfeasor's liability carrier to defend is impliedly recognized in the last sentence of subsection (b) of W.Va.Code, 33–6–31, that states: "No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy." This sentence was added in 1988 and precludes an underinsured carrier from setting off payments made by the liability carrier against the amounts due under the underinsurance coverage.

We conclude that the legislature, by precluding a set-off by the underinsured carrier intended that the liability carrier's payment serve as the initial layer of damage recovery. It follows that the underinsured carrier's limits are then *additional* coverage. We believe that the language in W.Va.Code, 33–6–31(b), forbidding a set-off, indicates a legislative intent to make the liability carrier the primary coverage carrier, and the underinsured carrier the excess or additional coverage carrier.

■ The Louisiana Supreme Court in *Bond v. Commercial Union Assurance Co.*, 407 So.2d 401, 410 (1981), explicitly recognized the relationship between the underinsured carrier and the liability carrier for the tortfeasor as an additional or excess insured when it stated:

> "Accordingly, the object of the uninsured motorist statute, as amended, is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured." (Citations omitted).

We, therefore, conclude that an underinsured motorist carrier occupies the position of an excess or additional insurer in regard to the tortfeasor's liability carrier, which is deemed to have the primary coverage. Consequently, the tortfeasor's liability carrier, having primary coverage, should ordinarily control the litigation on behalf of the tortfeasor insured.

■ This does not mean that an excess carrier, such as an underinsured carrier, is without protection against either collusion between the plaintiff and the liability carrier or negligent handling of the defense. It is generally acknowledged that a primary insurance carrier has a duty to act in good faith with respect to an excess or additional insurance carrier when defending a claim on behalf of the primary insurance carrier's insured. *See, e.g., Valentine v. Aetna Ins. Co.*, 564 F.2d 292 (9th Cir.1977); *American Fidelity & Cas. Co. v. All Am. Bus Lines, Inc.*, 190 F.2d 234 (10th Cir.), *cert. denied*, 342 U.S. 851, 72 S.Ct. 79, 96 L.Ed. 642 (1951);

investigation, negotiation and defense of claims until its limits are exhausted.... Thus, the primary insurer acts as a sort of deductible and the excess insurer does not expect to be called upon to assist in these details."

**9.** The Court's discussion in *Allstate, supra*, centered on the fact that both policies contained pro-rata and excess coverage language that could

not be reconciled. We stated in Syllabus Point 1: "We adopt the rule that when a pro-rata clause and an excess clause appear in the automobile liability policies of both the driver and the owner of an automobile, the insurer of the owner is primarily liable and must bear the whole loss, within the limits of the policy."

*Allstate Ins. Co. v. Reserve Ins. Co.,* 116 N.H. 806, 373 A.2d 339 (1976); *Home Ins. Co. v. Royal Indem. Co.,* 68 Misc.2d 737, 327 N.Y.S.2d 745, *aff'd,* 39 A.D.2d 678, 332 N.Y.S.2d 1003 (1972); *Centennial Ins. Co. v. Liberty Mut. Ins. Co.,* 62 Ohio St.2d 221, 404 N.E.2d 759 (1980). We therefore apply the foregoing principle to underinsured motorist carriers to the extent that if an underinsured motorist carrier can demonstrate that the liability insurance carrier of the tortfeasor is defending the claim in a bad faith manner, the underinsured motorist carrier may petition the court to allow it to assume primary control of the defense.

■ We recently recognized another protection afforded to an underinsured carrier in *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394 (1993). There, we stated in Syllabus Point 3 that if the underinsured carrier's policy has a "consent-to-settle" provision, the underinsured carrier must consent to the plaintiff's settlement with the tortfeasor's liability carrier:

> "A consent-to-settle provision of an automobile insurance policy pertaining to underinsured motorist coverage whereby an insured voids his underinsurance coverage by settling a claim with a tortfeasor without first obtaining the insurer's written consent when such claim involves either the insured's underinsurance coverage or potentially involves that coverage is a valid and enforceable means by which an insurer may protect its statutorily-mandated right to subrogate claims pursuant to West Virginia Code § 33–6–31(f) (1992)." [10]

■ The consent-to-settle language in an underinsured policy is common, and, as we indicated in the foregoing Syllabus, it protects the insurer's statutory subrogation right. However, it is also designed to foreclose a collusive settlement between the plaintiff and the tortfeasor's liability carrier.

*See generally* 2 Widiss, *Uninsured and Underinsured Motorist Coverage* § 17.2 (1992).

■ In addition to the foregoing protections afforded an underinsured carrier, it is clear that such a carrier may assume control of the litigation on behalf of the tortfeasor where the tortfeasor's liability carrier has declined to defend. Moreover, an underinsured motorist carrier is not foreclosed from filing an answer on behalf of the tortfeasor when it appears that a default judgment might be entered against the tortfeasor. [11]

■ Finally, we find that a liability carrier and an underinsured motorist carrier may agree to jointly defend an action by having their respective attorneys participate together in the defense. This does not mean that they may file separate pleadings, indulge in separate discovery, or examine witnesses separately.

■ In a related matter, we also recognize that W.Va.Code, 33–6–31(f), gives a right of subrogation as follows:

> "An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the right of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made."

While this right of subrogation can be waived by the uninsured or underinsured carrier, we do not believe such carrier can be forced to waive its subrogation rights by the threat of a tortfeasor's liability carrier to withhold settlement of the claim. The primary liability carrier of the tortfeasor has a duty to deal in good faith both with its insured and with the underinsured carrier, and may subject itself to a bad faith suit by making such a demand and refusing to settle if such demand is not met. *See Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990).

---

**10.** However, as we recognized in note 10 of *Arndt v. Burdette,* 189 W.Va. at 728, 434 S.E.2d at 400: "It is important to note that if an insurer acts unreasonably in refusing to give written consent to settle, that insurer may be subjecting itself to a bad faith claim pursuant to this Court's holding in *Shamblin v. Nationwide Mutual Insur-*

*ance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990)."

**11.** Prudence would dictate that the underinsured carrier first contact plaintiff's counsel to determine if an extension of time to answer had been granted.

■ We have recognized that subrogation is an equitable doctrine, stating in Syllabus Point 2 of *Kittle v. Icard*, 185 W.Va. 126, 405 S.E.2d 456 (1991):

> " ' "Subrogation, being a creation of equity, will not be allowed except where the subrogee has a clear case of right and no injustice will be done to another." Syllabus, *Buskirk v. State–Planters' Bank & Trust Co.*, 113 W.Va. 764, 169 S.E. 738 (1933).' Syllabus point 6, *Fuller v. Stonewall Cas. Co. of W.Va.*, 172 W.Va. 193, 304 S.E.2d 347 (1983)."

Other jurisdictions have specifically dealt with the right of subrogation in an uninsured or underinsured motorist context. In these cases, the right of subrogation existed either by virtue of language in the insurance policy or by virtue of a statute similar to W.Va. Code, 33–6–31(f). The general rule is summarized in 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 19.6 at 124:

> "Courts in a substantial number of states have concluded that the terms of a subrogation or trust provision are not enforceable when the insured has not been fully indemnified; consequently, an attempt by an insurance company to secure proceeds of a recovery from a third party—such as the uninsured motorist or a party who is jointly liable—is appropriately denied when the damages sustained by an insured have not been completely compensated."

*See, e.g., White v. Nationwide Mut. Ins. Co.*, 361 F.2d 785 (4th Cir.1966) (Virginia law— statute); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Humphrey*, 54 Ala.App. 343, 308 So.2d 255 (1975) (policy); *Government Employees Ins. Co. v. Oliver*, 192 Cal.App.3d 12, 237 Cal.Rptr. 174 (1987) (statute); *Central Nat'l Ins. Group v. Hotte*, 312 So.2d 235 (Fla.App.1975) (policy); *Thatcher v. Eichelberger*, 102 Ill.App.3d 231, 57 Ill.Dec. 816, 429 N.E.2d 1090 (1981) (statute); *Bond v. Commercial Union Assurance Co., supra* (statute); *Michigan Mut. Ins. Co. v. Shaheen*, 101 Mich.App. 761, 300 N.W.2d 599 (1980) (policy); *Milbank Mut. Ins. Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974) (statute); *Dunnam v. State Farm Mut. Auto. Ins. Co.*, 366 So.2d 668 (Miss.1979) (statute);

*McGhee v. Charley's Other Brother*, 161 N.J.Super. 551, 391 A.2d 1289 (Law Div. 1978), *aff'd sub nom. Mozee v. McGhee*, 171 N.J.Super. 454, 410 A.2d 46 (1979) (policy); *Walls v. City of Pittsburgh*, 292 Pa.Super. 18, 436 A.2d 698 (1981) (statute); *Lombardi v. Merchants Mutual Insurance Co.*, 429 A.2d 1290 (R.I.1981) (policy).

The Supreme Court of Minnesota in *Milbank Mut. Ins. Co. v. Kluver*, 302 Minn. at 315–16, 225 N.W.2d at 233, after examining its uninsured motorist statute, came to this conclusion:

> "We are persuaded by the rationale of these cases and by our own analysis of the statute in question that the uninsured motorist coverage statute should be construed to mean that an uninsured-motorist liability carrier does not have the right to be subrogated to the proceeds of a settlement its policyholder makes with liquor vendors allegedly liable ... *where the policyholder has not been fully compensated for her injuries. Subrogation should be permitted to the extent necessary to avoid a double recovery by such a policyholder.*" (Emphasis added).

■ We agree with this analysis and conclude that the right of subrogation in W.Va. Code, 33–6–31(f), is not available where the policyholder has not been fully compensated for the injuries received and still has the right to recover from other sources. Subrogation is permitted only to the extent necessary to avoid a double recovery by such policyholder.

## IV.

Allstate's next claim is that if it is denied the right to participate in this litigation, its constitutional due process rights will be infringed. We are not cited nor have we found any case where an underinsured or excess carrier has raised a due process argument based on the premise of its inability to proceed to fully represent the defendant tortfeasor.

■ In this type of litigation, the named defendant is the tortfeasor. It is this party who has due process rights. The underinsured carrier, if properly brought into a case, has a duty under its contract and the lan-

guage of W.Va.Code, 33–6–31(d), to afford coverage to the plaintiff and to pay up to the policy limits on any judgment obtained against the defendant not covered by the tortfeasor's liability carrier. The fact that the actual defense of the tortfeasor is conducted by his or her liability carrier does not mean that the underinsured carrier's rights are sacrificed. The protections that we have afforded the underinsured carrier in Part III of this opinion will further protect that carrier's rights. Thus, we conclude that an underinsured motorist carrier does not have a due process right to assume independent control of the defense of a tortfeasor who is represented by a liability carrier.

The few cases which can be found relating to an underinsured motorist carrier's right to intervene do not allow intervention as a matter of right nor do they express any due process considerations. In *Husfeldt v. Willmsen*, 434 N.W.2d 480 (Minn.App.1989), the court affirmed the trial court's decision denying intervention to the underinsured carrier. The argument was advanced that the underinsured carrier would be liable for any verdict in excess of the coverage afforded by the tortfeasor's liability carrier. The court rejected this argument, stating: "[I]t has not made a showing that its rights are not being adequately represented by the existing parties. It made a conclusory statement that its rights will be jeopardized, but gave no specific facts or reasons why." 434 N.W.2d at 482–83.

The Kansas Supreme Court in *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985), determined that an underinsured motorist carrier had the option to intervene, but did not discuss what role the carrier would play with regard to handling the litigation with the tortfeasor's liability carrier. *See also Ramsey v. Chism*, 249 Kan. 299, 817 P.2d 198 (1991). The *Haas* court relied on *Tidmore v. Fullman*, 646 P.2d 1278 (Okla.1982), which accorded the underinsured carrier the right to intervene, but did not discuss the underin-

sured carrier's role in the case *vis-a-vis* the tortfeasor's liability carrier. We do not find these cases to be helpful since they do not analyze the issue before us, i.e., the role to be played by the underinsured carrier once litigation is commenced.

Nor do we find that the procedural language in W.Va.Code, 33–6–31(d),[12] allowing an uninsured/underinsured carrier to file pleadings in its own name or on behalf of the tortfeasor, *see Postlethwait v. Boston Old Colony Ins. Co., supra,* enables the carrier to control the defense on behalf of the tortfeasor or to conduct a separate defense. It must be remembered that under W.Va.Code, 33–6–31(d), a plaintiff files suit against a tortfeasor. If the plaintiff desires to bring his or her uninsured or underinsured coverage into play, a copy of the complaint must be served on that carrier.[13] However, the uninsured or underinsured carrier is not a named party in the complaint.

It must be remembered also that W.Va. Code, 33–6–31, now addresses *both* uninsured and underinsured motorist coverages. Originally, W.Va.Code, 33–6–31(b) and –31(d), addressed only uninsured motorist coverage. It was not until 1982 that underinsured motorist coverage was added to the purview of W.Va.Code, 33–6–31(b).[14] Even though the right to obtain underinsured motorist coverage was added to subsection (b), the procedure outlined in W.Va.Code, 33–6–31(d), still only included uninsured motorists and did not refer to *underinsured* motorists. This oversight was not corrected until 1988 when the term "underinsured" was placed in W.Va. Code, 33–6–31(d).[15]

 It is apparent from the foregoing legislative history that the original purpose of W.Va.Code, 33–6–31(d), was to protect the uninsured motorist carrier where the tortfeasor had *no* liability coverage. In this situation, the uninsured motorist carrier would be the only insurance carrier liable. In the absence of more specific language, W.Va. Code, 33–6–31(d), does not give an underin-

---

12. The applicable portion of W.Va.Code, 33–6–31(d), is: "[S]uch company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name."

13. For the complete text of W.Va.Code, 33–6–31(d), see note 3, *supra.*

14. *See* 1982 W.Va.Acts ch. 106.

15. *See* 1988 W.Va.Acts ch. 75.

sured motorist carrier the absolute right to file pleadings on behalf of a tortfeasor who has liability coverage and is being defended by the liability insurance carrier.

 Moreover, the language of W.Va. Code, 33–6–31(d), that allows an uninsured or underinsured carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy. We recognized a similar right on behalf of a plaintiff who sues a tortfeasor and discovers that the tortfeasor's carrier has denied coverage in *Christian v. Sizemore,* 181 W.Va. 628, 383 S.E.2d 810 (1989). There, we held that a declaratory judgment cause of action could be placed in the complaint for personal injuries and that such an issue should be resolved prior to submitting the liability issue to the jury.[16] However, we do not find that this right of the underinsured carrier to file an answer in its own name was intended to give the underinsured carrier the right to separately defend along with the tortfeasor's own carrier.[17]

As an ancillary claim, Allstate asserts that the trial court erred when it required Allstate to elect whether to file an answer in its own name or to allow the tortfeasor's liability carrier to defend. However, we do not agree. The apparent purpose of that requirement was to determine whether Allstate intended to assert some policy defense in order to avoid coverage under its underinsured policy.

Having determined that the Circuit Court of Marshall County was correct in its ruling, we decline to issue the writ of prohibition.

Writ denied.

---

**16.** Syllabus Point 3 of *Christian v. Sizemore, supra,* states: "An injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage for obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage."

**17.** It is difficult to conceive of any other reason why an uninsured or underinsured carrier would answer for the tortfeasor by filing the answer in the insurance carrier's own name. If the carrier answered in its own name, it could well waive its right not to have insurance mentioned in the tortfeasor's liability case. *See Davis v. Robertson,* 175 W.Va. 364, 332 S.E.2d 819 (1985); *Coffindaffer v. Coffindaffer,* 161 W.Va. 557, 244 S.E.2d 338 (1978).