450 S.E.2d 791

**Robert Michael MARSHALL and Mary Lou Marshall, Plaintiffs Below, Appellees,**

v.

**Rosella S. SASEEN, Defendant Below, Appellee,**

**Erie Insurance Company, Appellant.**

**No. 22038.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1994.

Decided Nov. 2, 1994.

Robert P. Fitzsimmons, Russell Jay Guthrie, Fitzsimmons Law Offices, Wheeling, and G. Charles Hughes, Moundsville, for appellees, Robert Michael Marshall and Mary Lou Marshall.

Michael G. Gallaway, Gerald G. Jacovetty, Jr., McDermott, Bonenberger, McDermott & Gallaway, and Louis J. John, John & John, Wheeling, for appellee, Rosella S. Saseen.

James D. Lamp, Robert E. Gifford, Lamp, O'Dell, Bartram & Ensminger, Huntington, and Thomas M. McCulloch, Wheeling, for appellant, Erie Ins. Co.

MILLER, Justice: [1]

At issue in this appeal is whether the plaintiffs (Marshalls) can recover damages in excess of the $100,000.00 underinsured motorist coverage in the policy issued the plaintiff by its insurance carrier, Erie Insurance Company (Erie).

## I.

Mr. Marshall was injured in an automobile accident in January, 1989, when his vehicle was struck by a vehicle driven by Ms. Rosella Saseen. Ms. Saseen had liability insurance coverage with Motorist Mutual Insurance Company (Motorist Mutual). Suit was instituted against Ms. Saseen, and Erie was also served, pursuant to the underinsured motorist statute, W.Va.Code, 33–6–31(d).[2]

Erie retained counsel, who appeared as counsel for Ms. Saseen in addition to the attorney retained by her liability insurance carrier. Discovery was undertaken by the various parties. Four days before trial, Ms. Saseen's liability carrier settled with the plaintiffs by paying the limits of her $50,-

---

1. Pursuant to an Administrative Order entered by this Court on September 13, 1994, retired Justice Thomas B. Miller was recalled for the September 1994 Term because of the physical incapacity of Chief Justice W.T. Brotherton, Jr.

2. W.Va.Code, 33–6–31(d), provides:

Any insured intending to rely on the coverage required by subsection (b) of this section shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.

Nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding.

000.00 liability policy. Erie was made aware of this settlement and agreed to waive its statutory subrogation rights against Ms. Saseen.[3]

The plaintiffs then demanded that Erie pay the $100,000.00 limit of its underinsured motorist policy. Erie declined and, instead, offered to settle for $10,000.00. This offer was rejected by the plaintiffs, and the case proceeded to trial, with Erie's counsel defending Ms. Saseen. The jury found Ms. Saseen to be 100% at fault and awarded the plaintiffs $226,711.80.

After the verdict was returned, the Circuit Court of Ohio County gave credit for the $50,000.00 settlement received by the plaintiffs from Ms. Saseen's liability carrier. The court ruled that Erie was guilty of bad faith as a matter of law and entered judgment against Erie for $176,711.80. Subsequently, Erie paid $100,000.00 to the plaintiffs in partial settlement of the judgment. The parties specifically reserved their right to contest the $76,711.80 excess judgment.

On appeal, Erie maintains that the trial court erred in entering the judgment directly against it rather than against the named defendant, Ms. Saseen. As a corollary to this argument, Erie states that the entry of the judgment against it prevented it from litigating whether it had acted in bad faith in refusing to settle for the limits of its underinsured motorist policy. Erie also claims that the trial court's actions extended *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990), to first party insurance claims.

## II.

Before addressing the precise issues raised in this case, it is useful to review some of our prior decisions involving underinsured motorist coverage. In *State ex rel. Allstate Insurance Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993), we discussed the underinsured and uninsured motorist statute, W.Va.Code, 33–6–31(d) and outlined the procedural rights and duties of an uninsured and underinsured motorist insurance carrier, giving this summary in syllabus points 3, 14, and 4:

3. "W.Va.Code, 33–6–31(d) (1988), outlines certain rights given to an uninsured/underinsured insurance carrier where a tortfeasor who is uninsured or underinsured is sued by a plaintiff. It requires that a copy of the complaint be served upon the insurance carrier. It also allows the carrier 'the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured vehicle or in its own name.'" Syllabus Point 1, *Postlethwait v. Boston Old Colony Ins. Co.*, 189 W.Va. 532, 432 S.E.2d 802 (1993).

14. The language of W.Va.Code, 33–6–31(d) (1988), that allows an uninsured or underinsured motorist carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy.

4. An underinsured motorist carrier occupies the position of an excess or additional insurer in regard to the tortfeasor's liability carrier, which is deemed to have the primary coverage. Consequently, the tortfeasor's liability carrier, having primary coverage, should ordinarily control the litigation on behalf of the tortfeasor insured.

In syllabus point 2 of *Postlethwait v. Boston Old Colony Insurance Co.*, 189 W.Va. 532, 432 S.E.2d 802 (1993), we recognized our general rule that a direct suit against an uninsured or underinsured motorist carrier under W.Va.Code, 33–6–31(d) is not permissible.

W.Va.Code, [33–6–31(d) (1988) ], our uninsured motorist statute, does not authorize a direct action against the insurance company providing uninsured motorist coverage until a judgment has been obtained against the uninsured motorist.

---

**3.** W.Va.Code, 33–6–31(f) provides the following:

An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made. . . .

However, in *Postlethwait* we did create a limited exception to the no direct action rule where the conditions set forth in syllabus point 4 are met.

A plaintiff is not precluded under W.Va. Code, 33–6–31(d) (1988), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.

Subsequently, in *Plumley v. May*, 189 W.Va. 734, 434 S.E.2d 406 (1993), we considered the nature of the cause of action that arises under an uninsured or underinsured motorist insurance policy, stating "... it is the contractual nature of the relationship between the insured and the insurer which underlies an action attempting to obtain uninsured or underinsured motorist benefits." 189 W.Va. at 738, 434 S.E.2d at 410.

Moreover, under W.Va.Code 33–6–31(b) [4] an automobile insurance policy issued in this state must have an endorsement giving the policyholder uninsured motorist coverage with limits no less than that required under our Motor Vehicle Safety Responsibility Law. W.Va.Code, 17D–4–2 (1979). [5] W.Va. Code, 33–6–31(b) also requires that an insurance company issuing an automobile insurance policy in the state offer to its insured the additional options of obtaining higher coverage for uninsured motorist protection. [6] This section also requires an insurer to offer an insured the option of obtaining uninsured and underinsured motorist coverage "... up to an amount not less than limits of bodily injury liability ..." purchased by this insured. [7] Thus, under W.Va.Code, 33–6–31(b), there is a statutory basis for requiring uninsured and underinsured motor vehicle coverage in this state. With this background in mind, we discuss the issues raised.

### III.

Erie contends that the trial court erred in entering judgment against it because Erie was not a named party to the suit, and the jury verdict was only against Ms. Saseen. As we pointed out in *Postlethwait, supra*, under W.Va.Code, 33–6–31(d), a plaintiff is not required to name the uninsured or underinsured motorist carrier. Moreover in syllabus point 12 of *State ex rel. Allstate Insurance Co. v. Karl, supra*, we concluded that an underinsured motorist carrier is not deprived of due process because it does not have independent control of the defense of the case.

An underinsured motorist carrier does not have a due process right to assume independent control of the defense of a

---

**4.** W.Va.Code, 33–6–31(b) states, in relevant part:

Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of the code of West Virginia, as amended from time to time....

**5.** W.Va.Code, 17D–4–2 requires these limits:

... the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and ... in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident ...

**6.** The applicable text of W.Va.Code, 33–6–31(b) states:

"... Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident ..."

**7.** The applicable portion of W.Va.Code, 33–6–31(b) is

... Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy....

tortfeasor who is represented by a liability carrier.

In this case, Erie, through its counsel, had full control of the case at trial.

More important, however, is the fact that the insurer is statutorily required to offer underinsured motorist coverage. If the insured accepts such offer, then under W.Va. Code, 33–6–31(b) the insurer is required "... to pay the insured all sums which he shall legally be entitled to recover...."[8] Accordingly, when the verdict was rendered against Ms. Saseen, Erie had an obligation to pay it.

Thus, we conclude that under W.Va.Code, 33–6–31(b), an insurance carrier is statutorily required to pay to its insured, who has purchased uninsured or underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle.

■ The statutory obligation of an insurer to pay under W.Va.Code, 33–6–31(b) is confined to the policy limits of the uninsured or underinsured motorist coverage. The insurer's liability is not dependent on it being a named party in a suit filed under W.Va.Code, 33–6–31(d). This statutory procedure does not violate due process because the insurer is afforded notice of the suit and an opportunity to defend under the principles set out in *State ex rel. Allstate Insurance Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993).

Consequently, we find no error in the trial court's entry of judgment against Erie. However, it is the amount of the judgment rendered which is the subject of our next discussion.

## IV.

In addition to Erie's procedural claim that it was immune from judgment, which we have rejected, Erie asserts it should not be held liable for the excess judgment. Without expressly saying so, Erie apparently admits its liability for the policy limits of $100,000. Erie's chief argument is that *Shamblin v. Nationwide Mutual Insurance Company*, 183 W.Va. 585, 396 S.E.2d 766 (1990) should

not be extended to first party claims, and, consequently, Erie should not be liable for any verdict in excess of policy limits. This damages argument cannot be answered as simply as Erie suggests.

We agree with Erie that an underinsured or uninsured motorist insurance policy is first party insurance. As we have previously explained, Erie had a contractual obligation to provide coverage to its policyholder, the plaintiff. Moreover, once the policyholder elected to obtain underinsured motorist coverage, W.Va.Code, 33–6–31(b) required the insurer to pay the policyholder what he was legally entitled to recover up to the policy limits. In this situation, we apply the standard set forth in syllabus point 1 of *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986), which involved a first party claim where the insurer denied coverage and was sued by its insured.

Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

The jury in *Hayseeds* also awarded punitive damages, but we reversed this award, because in syllabus point 2 we found that the evidence did not meet the following standard:

An insurer cannot be held liable for punitive damages by its refusal to pay on an insured's property damage claim unless such refusal is accompanied by a malicious intention to injure or defraud.

In *Hayseeds*, we began our analysis by recognizing the law set out in syllabus point 2 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986):

Where a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation.

8.  For the applicable language of W.Va.Code, 33– 6–31(b) see note 7, *supra*.

In *Hayseeds*, 177 W.Va. at 329, 352 S.E.2d at 79, we also went on to state the following proposition, which was the rationale behind *Pitrolo*:

> We adopted this rule in recognition of the fact that, when an insured purchases a contract of insurance, he buys insurance— not a lot of vexatious, time-consuming, expensive litigation with his insurer.

Although we recognize that *Hayseeds* and its progeny involved insurance policies covering property damage claims, we can see no reason why these principles should not apply to uninsured and underinsured motorist coverage. As we pointed out earlier, an insurer is required to offer this statutorily authorized coverage when issuing an automobile insurance policy. Such policies customarily contain coverage for property damage to the insured's vehicle. The critical point is that this property damage coverage, as well as the uninsured and underinsured motorist coverage, constitutes first party insurance. First party insurance means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits.

The premise underlying *Hayseeds* was that the insurer had contractually promised the insured such coverage. Consequently, the insurer had a duty to settle with its insured on a claim for which the insured was legally entitled to recover. If the insurer declined to settle, and the insured was required to sue and then substantially prevailed, the insurer was liable for not just the verdict but also for attorney fees and incidental damages. In Syllabus point 1 of *Jordan v. National Grange Mutual Insurance Co.*, 183 W.Va. 9, 393 S.E.2d 647 (1990), we explained the concept of "substantially prevails" as follows:

> An insured "substantially prevails" in a property damage action against his or her insurer when the action is settled for an

amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount. In either of these situations the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds.[9]

■ In this case, it is clear that the plaintiffs substantially prevailed. Erie's pretrial settlement offer was $10,000 out of the $100,000 underinsured motorist policy. The verdict was far in excess of the policy limit. Not only did Erie's refusal to pay violate the *Hayseeds* standard, but, as we have already pointed out, it also violated the statutory obligation to pay the insured what he is legally entitled to recover under W.Va.Code, 33–6–31(b). Thus, we conclude that when a policyholder of uninsured or underinsured motorist coverage issued pursuant to W.Va. Code, 33–6–31(b) substantially prevails in a suit involving such coverage under W.Va. Code, 33–6–31(d), the insurer is liable for the amount recovered up to the policy limits, the policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience.

Because we find the judgment against Erie for its policy limits to be proper, we remand this issue for the award of reasonable attorney fees under *Hayseeds*.

### V.

■ The remaining question is whether Erie is liable for the portion of the verdict in excess of the underinsured motorist policy limit. The trial court assessed a net excess judgment against Erie of $76,711.80,[10] ruling that Erie acted in bad faith in not settling the claim for policy limits. We find this ruling to be in error because it deprived Erie of the right to have a jury decide the question of whether it had acted in bad faith.

---

9. In *Hayseeds*, we set a standard for reasonable attorney fees. "Presumptively, reasonable attorneys' fees in this type of case are one-third of the face amount of the policy ..." 177 W.Va. at 329–30, 352 S.E.2d at 80.

10. The trial court determined the net excess judgment by taking the jury verdict of $226,-711.80 and subtracting from it the $50,000 paid to the plaintiffs by Ms. Saseen's liability carrier and the $100,000 paid by Erie under its underinsured motorist policy.

It is upon this excess judgment issue that this case becomes analogous to *Shamblin*. *Hayseeds* dealt with the consequences of failing to pay the policy limits which the plaintiff had contracted for with his insurance carrier. As we explained in *Hayseeds*, this payment of the policy amounts does not turn on whether the carrier acted in good faith, but merely on the question of whether the insured has substantially prevailed.

> Similarly, we consider it of little importance whether an insurer contests an insured's claim in good or bad faith. In either case, the insured is out his consequential damages and attorney's fees. To impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain. 177 W.Va. at 329, 352 S.E.2d at 79–80.

In this case, the trial was essentially a tort action. Negligence issues involving the underinsured tortfeasor and the possible comparative negligence of the plaintiff were the chief considerations, along with the extent of the injuries. The underinsurance carrier defending the tortfeasor had an established limit with which it could measure the case and its exposure. The verdict exceeds the policy limit, and, consequently, the *Hayseeds* standard is not applicable.

In this type of litigation, the question of whether the insurer acted in good faith is a distinct and separate inquiry that should not be injected into the liability case. As we explained in *Davis v. Robertson*, 175 W.Va. 364, 332 S.E.2d 819 (1985), our policy is "to avoid the unnecessary mention of insurance coverage at trial because of its possible prejudicial effect on the jury verdict." 175 W.Va. at 368, 332 S.E.2d at 823.

■ Here, the excess verdict claim is essentially based on the contention that Erie acted in bad faith when it failed to settle within the policy limits. This claim focuses on Erie's conduct in assessing the value of the underlying tort action. We resolve this issue in a manner substantially similar to any excess claim, where the issue is whether the insurer failed to exercise good faith in settling the claim. We follow the analysis outlined in syllabus point 4 of *Shamblin v. Nationwide Insurance Co.*, *supra*:

> In assessing whether an insurer is liable to its insured for personal liability in excess of policy limits, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances, bearing in mind always its duty of good faith and fair dealing with the insured. Further, in determining whether the efforts of the insurer to reach settlement and to secure a release for its insured as to personal liability are reasonable, the trial court should consider whether there was appropriate investigation and evaluation of the claim based upon objective and cogent evidence; whether the insurer had a reasonable basis to conclude that there was a genuine and substantial issue as to liability of its insured; and whether there was potential for substantial recovery of an excess verdict against its insured. Not one of these factors may be considered to the exclusion of the others.

■ This issue must necessarily be addressed in another trial in which the plaintiff may seek to recover the excess award. In that trial, the burden will be on the insurer, as we explained in syllabus point 3 of *Shamblin:*

> It will be the insurer's burden to prove by clear and convincing evidence that it attempted in good faith to negotiate a settlement, that any failure to enter into a settlement where the opportunity to do so existed was based on reasonable and substantial grounds, and that it accorded the interests and rights of the insured at least as great a respect as its own.

■ Thus, we conclude that where an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a good faith settlement within its policy limits under the principles set out in *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990).

In this case, the trial court erred in entering judgment for the excess verdict against Erie without holding a second trial to determine if Erie was guilty of bad faith in failing to settle within its policy limits. This portion of the verdict is set aside, with leave for the plaintiffs to file a subsequent suit on the bad faith claim.

For the foregoing reasons, the judgment of the Circuit Court of Ohio County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

BROTHERTON, C.J., did not participate.

MILLER, J., Retired, sitting by special assignment.