452 S.E.2d 394

**Charles Lee MORRISON, Administrator of the Estate of Paul M. Morrison, Plaintiff Below, Appellant,**

v.

**Richard Allen HAYNES, Defendant Below, Appellee.**

**No. 22152.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1994.

Decided Nov. 23, 1994.

Harry G. Deitzler, Hill, Peterson, Carper, Bee & Deitzler, Charleston, for appellant.

Andrew J. Goodwin, Charleston, for appellee.

MILLER, Justice: [1]

In this appeal, the plaintiff, Charles Lee Morrison, Administrator of the Estate of Paul M. Morrison, seeks to recover from Erie Insurance Company (Erie) an excess verdict over the limits of its uninsured motorist coverage. In November, 1990, Paul Morrison was a passenger in an automobile owned and driven by the defendant, Richard Allen Haynes. The defendant Haynes had placed a loaded .22 caliber rifle in the automobile. The rifle fired while Haynes negligently drove the car, killing Paul Morrison.

A civil action was instituted against Mr. Haynes by the administrator of the estate. Mr. Haynes had no insurance, and, prior to trial, the appellant recovered $100,000 in uninsured motorist coverage from Nationwide Insurance Company (Nationwide) and also $7,000 in medical payment coverage. Nationwide provided this coverage on one vehicle owned by Charles M. Morrison and on a second vehicle owned by Charles and Barbara Morrison, the parents of the deceased, Paul M. Morrison, who resided with them at the time of the accident. There is no dispute that he was an additional insured under the Nationwide policies as a family member living in their home.

In addition, Erie Insurance Company had issued two policies on two other vehicles owned by the decedent's family, which provided an additional $100,000 in uninsured motorist coverage on each vehicle. While Erie initially disputed coverage, it conceded coverage before trial, but declined to pay the $200,000 limits. Prior to trial, Erie offered $120,000, which was not accepted. However, the jury returned a verdict of $775,000, finding the defendant Haynes 90% negligent and the decedent 10% negligent.

1. Pursuant to an Administrative Order entered by this Court on September 13, 1994, retired Justice Thomas B. Miller was recalled for the September 1994 term because of the physical incapacity of Chief Justice W.T. Brotherton, Jr.

Shortly after the trial, Erie paid the $200,-000 uninsured policy limits. The appellant then moved the circuit court to require Erie to pay the excess amount of the judgment, together with interest and attorney fees. The circuit court declined, holding that it did not have jurisdiction to award such a judgment against Erie. Since that time, we issued our recent decision in *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994), which is relevant to our decision in this case.

## I.

■ *Marshall* involved facts similar to those in this case. In *Marshall,* there was an automobile accident involving the Marshall's vehicle and the Saseen car, which had an automobile liability insurance policy. After suit was filed, Saseen's liability carrier settled with the Marshalls for the full extent of its limits. Thereafter, Erie, which had $100,000 in underinsurance coverage, refused to settle within these limits. The case was tried before a jury, which awarded a verdict of $226,711.80 to the Marshalls. After the verdict was returned, Erie paid its $100,000 limit. The circuit court then entered a judgment against Erie for the excess verdict, less the $50,000 paid by Saseen's liability carrier and the $100,000 paid by Erie under its underinsured motorist policy.

In this case, as in *Marshall,* Erie claims that it is not responsible for a direct judgment. Here, as in *Marshall,* Erie was served a copy of the initial complaint as required under W.Va.Code, 33–6–31(d).[2] Further, like *Marshall,* Erie's attorney defended the underlying tortfeasors. In syllabus point 1 of *Marshall,* we pointed out that the purpose of W.Va.Code, 33–6–31(d), was to permit a plaintiff who intended to rely on his uninsured or underinsured coverage to

serve his insurer with a copy of the complaint:

" ' "W.Va.Code, 33–6–31(d) (1988), outlines certain rights given to an uninsured/underinsured insurance carrier where a tortfeasor who is uninsured or underinsured is sued by a plaintiff. It requires that a copy of the complaint be served upon the insurance carrier. It also allows the carrier 'the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both of the uninsured or underinsured vehicle or in its own name.' " Syllabus Point 1, *Postlethwait v. Boston Old Colony Insurance Co.,* 189 W.Va. 532, 432 S.E.2d 802 (1993).' Syllabus Point 3, *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993) [*Cert. denied,* — U.S. —, 114 S.Ct. 1302, 127 L.Ed.2d 653 (1994) ]."

West Virginia Code, 36–6–31(d), permits the uninsured or underinsured motorist carrier to contest whether there was coverage under its policy:

"The language of W.Va.Code, 33–6–31(d) (1988), that allows an uninsured or underinsured motorist carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy." Syllabus point 14, *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993) [*Cert. denied,* — U.S. —, 114 S.Ct. 1302, 127 L.Ed.2d 653 (1994).]

*Id.* at syl. pt. 2. However, Erie did not use this procedure in either this case or in *Marshall.*

In *Marshall,* we reviewed the language of W.Va.Code, 33–6–31(b), which contains re-

---

**2.** W.Va.Code, 33–6–31(d) (1988), provides:

Any insured intending to rely on the coverage required by subsection (b) of this section shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have

the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.

Nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding.

quirements that an uninsured or underinsured motorist insurance carrier must comply with regarding policies issued in this state, and concluded that:

> Under W.Va.Code, 33–6–31(b), there is a statutory basis for requiring uninsured and underinsured motor vehicle coverage in this state.

*Id.* at syl. pt. 3.

> Under W.Va.Code, 33–6–31(b), an insurance carrier is statutorily required to pay to its insured, who has uninsured or underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle. W.Va.Code, 33–6–31(b).

*Id.* at syl. pt. 4. Next, we answered the question of whether an uninsured or underinsured motorist carrier was obligated to pay the judgment rendered against the defendant tortfeasor:

> The statutory obligation of an insurer to pay under W.Va.Code, 33–6–31(b) is confined to the policy limits of the uninsured or underinsured motorist coverage. The insurer's liability is not dependent on it being a named party in a suit filed under W.Va.Code, 33–6–31(d). This statutory procedure does not violate due process because the insurer is afforded notice of the suit and an opportunity to defend under the principles set out in *State ex rel. Allstate Insurance Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993).

*Id.* at syl. pt. 5.

Finally, our opinion in *Marshall* explained that uninsured and underinsured motorist coverage is essentially first party coverage. This is because the insurer, through the insurance policy with its insured, has contracted to extend such coverage. Our conclusion in *Marshall* was predicated on several of our earlier cases which dealt with first party insurance. In *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156

---

(1986), we adopted this rule as syllabus point 2:

> Where a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation.

*Pitrolo* was followed by *Hayseeds, Inc. v. State Farm Fire & Casualty,* 177 W.Va. 323, 352 S.E.2d 73 (1986), where the insured had to sue its insurer to recover on a fire loss. We followed *Pitrolo's* rationale in *Hayseeds,* adding that "when an insured purchases a contract of insurance, he buys insurance— not a lot of vexatious, time-consuming, expensive litigation with his insurer." 177 W.Va. at 329, 352 S.E.2d at 79. Consequently, we concluded that:

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

*Id.* at syl. pt. 1.

Thus, in *Marshall,* we recognized that there were substantial similarities between the first party insurance concepts in *Hayseeds* and its progeny, and the first party insurance in uninsured and underinsured motorist policies. This reasoning led us to adopt the *Hayseeds'* principle in syllabus point 6 of *Marshall.*

> When a policyholder of uninsured or underinsured motorist coverage issued pursuant to W.Va.Code, 33–6–31(b), substantially prevails in a suit involving such coverage under W.Va.Code, 33–6–31(d), the insurer issuing such policy is liable for the amount recovered up to the policy limits, the policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience.[3]

---

**3.** In *Marshall,* we explained the concept of substantially prevailing by citing syllabus point 1 of *Jordan v. National Grange Mutual Insurance Co.,* 183 W.Va. 9, 393 S.E.2d 647 (1990):

> An insured "substantially prevails" in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the com-

Consequently, in this case, the plaintiff is entitled to not only the policy limit of $200,-000 for the uninsured motorist coverage because it substantially prevailed, but, in addition, reasonable attorney fees and damages proven for aggravation and inconvenience. On remand, the trial court will make the necessary adjustments to this portion of the judgment which shall be entered against Erie.

## II.

In *Marshall*, we discussed at some length the issue of the amount in excess of Erie's uninsured policy. There, the trial court had entered a judgment against Erie for the excess amount of the verdict over Erie's underinsured policy limits. We determined that the trial court erred in entering an excess verdict against Erie because the question of whether it had actually acted in bad faith was a jury question. Further, we recognized that this issue could not be litigated properly in the initial suit filed under W.Va.Code, 33–6–31(d), because this section dealt with establishing liability on the part of the defendant tortfeasor. The finding of liability is a predicate to imposing liability against an uninsured or underinsured motorist insurance carrier under W.Va.Code, 33–6–31(d).[4]

The issue of whether the insurer had acted in bad faith was also discussed in *Marshall*. We found distinct analogies with the ordinary bad faith claims in third party litigation when the insurer fails to settle the case within the insured's policy limits, and concluded that:

> Where an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a

good faith settlement within its policy limits under the principles set out in *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990).

*Id.* at syl. pt. 7.

## III.

One point that was not discussed in *Marshall* was the effect of any offset on the excess verdict for the amounts previously paid from other insurance payments. We are aware of the language in W.Va.Code, 33–6–31(b), which states:

> No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

In *Brown v. Crum,* 184 W.Va. 352, 400 S.E.2d 596 (1990), this statutory language was considered in the context of an underinsured motorist insurance policy which had a $20,000 policy limit. The insurer claimed it had no liability to its insured because the tortfeasor's liability carrier had paid the plaintiff its full limits of $20,000. However, *Brown* noted that the underinsured liability carrier could not escape liability through this type of offset:

> In the present case, we reemphasize that W.Va.Code, § 33–6–31(b) precludes offsets of amounts paid by a tortfeasor's insurer against the underinsured motorist policy limits of an insurance carrier. This preclusion of offsets was the public policy of this state prior to the 1988 amendments which explicitly added such language to W.Va. Code, § 33–6–31(b).

*Id.* 400 S.E.2d at 599.

Prior to *Brown*, we discussed at some length the question of how the statutory offset should be applied in *State Automobile*

---

mencement of the action, as well as when the action is concluded by a jury verdict for such an amount. In either of these situations the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds.

**4.** In *Postlethwait v. Boston Old Colony Insurance Co.,* 189 W.Va. 532, 432 S.E.2d 802 (1993), we recognized that a plaintiff could sue his underinsured motorist carrier without first establishing a

judgment against the defendant tortfeasor. However, this could be done only if the plaintiff settled with the tortfeasor's liability carrier for the full amount of the policy limit and the underinsured motorist carrier had waived its right of subrogation under W.Va.Code, 33–6–31(f). However, even in this limited circumstance, we stated "... because no judgment was rendered against the tortfeasor ... the plaintiffs still will have to prove liability and their applicable damages." 189 W.Va. at 536, 432 S.E.2d at 806.

*Mutual Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990). There, we recognized that other jurisdictions had evolved two different approaches to this type of statute mainly due to the differences in statutory language. Under some statutes, it is recognized that payments made by the tortfeasor's liability carrier may be deducted from the underinsured motorist carrier's limit. "This . . . is premised upon the idea that the purpose of underinsured motorist coverage is to put the insured in the same position . . . had the tortfeasor's liability insurance limits been the same as the underinsured motorist coverage limits. . . ." 183 W.Va. at 566, 396 S.E.2d at 747. However, we rejected this interpretation and followed those jurisdictions that hold " . . . the tortfeasor's liability insurance coverage is to be set off against the amount of *damages* sustained by the injured person, and the insurer providing the underinsured motorist coverage is liable to such injured person, its insured, for any excess, up to the limits of the underinsured motorist coverage." 183 W.Va. at 567, 396 S.E.2d at 748. Therefore, the Court in *Youler* concluded that:

> W.Va.Code, 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits.

*Id.* at syl. pt. 4.

In situations involving uninsured motorist coverage, ordinarily there is no automobile liability insurance coverage carried by the tortfeasor and, therefore, an offset question does not arise from liability insurance payments. However, in this case, the decedent had the benefit of two uninsured motorist policies issued by Nationwide on other vehicles owned by his parents. Under *Youler,* these payments cannot be used to offset the uninsured policy limits of Erie so long as the plaintiff's verdict exceeded these payments and the limits of Erie's uninsured motorist coverage. Thus, we conclude under W.Va. Code, 33–6–31(b), an offset is not available to an uninsured or underinsured motorist carrier where the plaintiff's jury verdict exceeds both the amount he has received from other insurance arising from the tortfeasor's negligence and the amount available under the plaintiff's own uninsured or underinsured motorist carrier.

■ Thus far we have dealt with the statutory offset language as it relates to the insured's own uninsured or underinsured policy limits. Turning to the excess verdict over those amounts, we find that the offset language in W.Va.Code, 33–6–31(b), is not designed to foreclose an offset in the event the plaintiff pursues a bad faith claim against Erie for the excess. This is because the plaintiff seeks to impose an additional monetary liability on his own uninsured carrier because of its alleged bad faith in failing to settle within the policy limits. Essentially, the failure to settle is a separate tort than that which involved the original defendant tortfeasor, even though the additional damages, i.e., the excess verdict, arose from their actions as joint tortfeasors.

Consequently, an uninsured or underinsured motorist carrier who is found to have acted in bad faith is a joint tortfeasor along with the original defendant tortfeasor, where an excess verdict over its policy limits has been rendered in favor of the plaintiff. As a joint tortfeasor, he is entitled to offset on the excess verdict those amounts paid on behalf of the original defendant tortfeasor under our general rule contained in syllabus point 5 of *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990):

> " 'Where a payment is made, and release obtained, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong.' Point 2, Syllabus,

**310**

*Hardin v. The New York Central Railroad Company,* 145 W.Va. 676 [116 S.E.2d 697 (1960)]." Syllabus Point 1, *Tennant v. Craig,* 156 W.Va. 632, 195 S.E.2d 727 (1973).

Insofar as the excess verdict is concerned, if Erie were found to be liable in a bad faith suit, it would be entitled to deduct the $107,-000 previously paid by Nationwide to the plaintiffs. The excess verdict has already been established in the underlying liability trial against the defendant tortfeasor. If the plaintiff desires to file a bad faith suit, it will not be necessary to try the damage issue.

For the foregoing reasons, we reverse the judgment of the circuit court of Jackson County and remand the case under the principles stated herein.

Reversed and remanded.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.