453 S.E.2d 591

STATE of West Virginia ex rel. MOTORISTS MUTUAL INSURANCE COMPANY, a Foreign Corporation, Petitioner,

v.

Honorable W. Craig BROADWATER, Judge of the Circuit Court of Ohio County; Lin V. Humphries, Clerk of the Circuit Court of Ohio County; Edward L. Weith, Jr., Sheriff of Ohio County; Robert Lightner, Sheriff of Marshall County; Joseph Bartolo, Sheriff of Monongalia County; Michael Allman, Sheriff of Brooke County; and Beverly Cappelletti, Respondents.

No. 22466.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 12, 1994.

Decided Dec. 8, 1994.

David L. Wyant, Shuman, Annand & Poe, Charleston, for petitioner.

Robert P. Fitzsimmons, Russell J. Guthrie, Fitzsimmons Law Offices, Wheeling, for respondents.

Charles G. Hughes, G. Charles Hughes, L.C., Moundsville, for respondents.

WORKMAN, Justice:

Through this writ of prohibition, Petitioner Motorists Mutual Insurance ("Motorists") seeks to prevent the enforcement of certain writs of execution issued in connection with a

March 30, 1992, judgment order entered against it by the Circuit Court of Ohio County. The specific issue presented is the enforceability of a judgment order entered directly against an underinsurance carrier in the absence of an initial judgment against the underinsured motorist due to pretrial settlement. After examining this issue in conjunction with the facts of the instant case, we grant the requested writ of prohibition but only to permit the court below to determine the amount of underinsurance proceeds available pursuant to contract and to further permit the reentry of a judgment order against Motorists for that corresponding amount of underinsurance coverage.

Before discussing the enforceability issue, it is necessary to relate the factual and procedural history of the underlying civil action. On January 26, 1989, Beverly Cappelletti was involved in a two-vehicle accident in Ohio County, West Virginia. Ms. Cappelletti was driving her father's vehicle which was insured under a policy issued by Motorists. The driver of the other vehicle, William Thomas, was insured by State Farm Mutual Automobile Insurance Company ("State Farm"). Ms. Cappelletti filed suit against Mr. Thomas in the Ohio County Circuit Court ("circuit court") on August 1, 1990. On January 3, 1991, Motorists was served with a copy of the summons and complaint through the West Virginia Secretary of State's office in accordance with West Virginia Code § 33–6–31(d) (1992).[1]

Despite the opportunity provided by West Virginia Code § 33–6–31(d) to participate in the litigation upon service of the complaint,[2] Motorists chose not to file any pleadings or to participate in any fashion other than to monitor the circuit court proceedings. On Friday, March 20, 1992, Motorists received a

letter from Ms. Cappelletti's counsel notifying it of a settlement agreement between State Farm and Ms. Cappelletti. The terms of the agreement, as represented by the letter, were that State Farm would pay its $100,000 policy limits with the proviso that if Ms. Cappelletti were to recover a judgment in excess of $200,000, she would remit to State Farm up to $30,000 of any judgment exceeding $200,000. This March 20, 1992, letter demanded that Motorists notify Ms. Cappelletti's counsel regarding whether it would consent to settlement and waive its subrogation rights as well by noon on Monday, March 23, 1992. The letter further provided that in the event such consent had not been tendered by Motorists by the stated time, Ms. Cappelletti would presume that Motorists' consent had been tendered.

By letter dated March 23, 1992, Motorists refused to waive its subrogation rights or to give consent to settlement. Ms. Cappelletti takes the position that the refusal letter was ineffective as it was not received until after noon whereas Motorists claims that the letter was transmitted by facsimile prior to noon on March 23rd.[3]

On March 25, 1992, Ms. Cappelletti settled with both Mr. Thomas and State Farm for the amount of $100,000 and granted in return, a full and final release and discharge of Mr. Thomas and State Farm. On the same day of the settlement, a jury trial began in the civil action instituted by Ms. Cappelletti against Mr. Thomas. No one participated on behalf of Mr. Thomas at the trial and the jury awarded $600,000 to Ms. Cappelletti. On March 30, 1992, the circuit court entered judgment directly against Motorists in con-

---

1. West Virginia Code § 33–6–31(d) provides as follows:

    Any insured intending to rely on the coverage required by subsection (b) [uninsured or underinsurance coverage] of this section shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the

right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.

2. Motorists actually received the summons and complaint on January 7, 1991.

3. Motorists claims that it transmitted the facsimile to Ms. Cappelletti's counsel at 11:32 a.m. and the latter claims that it was not sent until 1:40 p.m.

nection with the jury award in the amount of $501,491.35.[4]

On March 27, 1992, two days prior to entry of the judgment in West Virginia, Motorists filed a declaratory judgment in the Court of Common Pleas of Belmont County, Ohio to determine whether it could be required to provide underinsurance coverage to Ms. Cappelletti.[5] The Ohio court ruled, by order dated October 13, 1993, that the West Virginia judgment order was not enforceable against Motorists on the grounds that conditions precedent to obtaining underinsurance proceeds from Motorists under the policy terms were not met.[6] This decision is currently on appeal before the Ohio Court of Appeals.

In conjunction with the March 30, 1992, judgment order entered by the circuit court, various writs of execution have been issued against Motorists. A writ of prohibition was filed by Motorists with this Court seeking to prevent execution of those writs and challenging the propriety of the trial court's entry of a judgment order directly against Motorists.

■ In syllabus point one of *Postlethwait v. Boston Old Colony Insurance Co.*, 189 W.Va. 532, 432 S.E.2d 802 (1993), we held that

W.Va.Code, 33–6–31(d) (1988), outlines certain rights given to an uninsured/underinsured insurance carrier where a tortfeasor who is uninsured or underinsured is sued by a plaintiff. It requires that a copy of the complaint be served upon the insurance carrier. It also allows the carrier 'the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured vehicle or in its own name.'

*Id.* at 533, 432 S.E.2d at 803. The plaintiff below, Ms. Cappelletti, properly complied with the requirements of West Virginia Code § 33–6–31(d) by effecting service of her complaint on Motorists through the Secretary of State's office. Following such service, Motorists was permitted to file pleadings in the civil action against Mr. Thomas. Motorists, however, opted to simply monitor the proceedings.

■ In *Postlethwait*, we examined whether a direct action could be brought against an insurance company providing uninsured motorist coverage and determined that " 'W.Va.Code, [33–6–31(d) (1988)], our uninsured[/underinsured] motorist statute, does not authorize a direct action against the insurance company providing uninsured motorist coverage until a judgment has been obtained against the uninsured motorist.' " 189 W.Va. at 535, 432 S.E.2d at 805 and Syl.Pt. 2, in part. By extension, this holding in *Postlethwait* would similarly require that a judgment must first be obtained against an underinsured motorist before a direct action could be maintained against an underinsurance carrier. Motorists maintains that the *Postlethwait* requirement of first obtaining a judgment against the underinsured was not met in this case, since the judgment order entered by the circuit court was not entered directly against the underinsured motorist, Mr. Thomas, but was entered against it instead.

Also of note is the argument raised by Ms. Cappelletti that the only issue which the Ohio court could properly address was whether Ohio should give full, faith and credit to the West Virginia judgment. We do not address this issue, however.

4. The $600,000 judgment was reduced by $100,000 to offset the amount of the settlement between Ms. Cappelletti and State Farm. The additional amount of $1,491.35 reflects prejudgment interest on medical bills totalling $4,717.

5. The jurisdictional basis for filing suit in Ohio was the issuance of the subject policy in that state. It appears, however, that Motorists' sole objective in initiating the Ohio litigation was to obtain an order finding some technical basis for declaring no policy coverage which would then operate as a bar to the judgment already obtained against it in West Virginia. Given the timing of the Ohio suit's filing—two days after the West Virginia judgment was obtained—we can reach no other conclusion.

6. While the record is unclear as to the specific policy conditions which were not met, it appears that the reasonableness of the amount of time in which Motorists had to respond to the March 20, 1992, letter demanding a consent to settle may have been the only condition precedent raised as a bar to coverage by Motorists.

Initially, we examine the origin of the requirement that a judgment must be obtained against an underinsured motorist prior to permitting suit against the underinsured carrier. As we discussed in *Davis v. Robertson*, 175 W.Va. 364, 332 S.E.2d 819 (1985), an insurer cannot be joined as a party to a negligence action "because there was no cause of action against the insurer until the liability of the insured had been established." *Id.* at 366, 332 S.E.2d at 821. In *Davis,* we also referenced our decision in *Jenkins v. J.C. Penney Casualty Insurance Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), holding that a bad faith insurance claim, pursuant to West Virginia Code § 33–11–4(9), could not be brought against an insurer until the plaintiff's underlying suit against the insured had been resolved and liability established. 175 W.Va. at 366, 332 S.E.2d at 821; *see also Morrison v. Haynes,* 192 W.Va. 303, 452 S.E.2d 394 (1994) ("finding of liability is a predicate to imposing liability against an uninsured or underinsured motorist insurance carrier under W.Va.Code, 33–6–31(d)"); *Broy v. Inland Mut. Ins. Co.,* 160 W.Va. 138, 233 S.E.2d 131 (1977) (recognizing that judgment against insured is necessary precondition for bringing suit against insurer). Each of these cases demonstrates that it was the need for a determination of liability which prompted the requirement of a judgment prior to permitting a direct suit against an insurance company.

Whereas Motorists asserts that only a judgment against the underinsured will suffice to permit recovery against it, we are not convinced that "judgment" is in fact the operative term. Instead, it appears that the establishment of liability is the key prerequisite to permitting direct recovery against an underinsurance carrier. Although in most cases such establishment of liability will include an initial judgment directly against the underinsured, the facts of this case illustrate an exception. *Cf. Plumley v. May,* 189

W.Va. 734, 434 S.E.2d 406 (1993) (recognizing that plaintiff who has already settled for liability limits with insurer's consent and waiver of subrogation rights can bring direct action against uninsurance or underinsurance carrier without first bringing suit against tortfeasor); Syl Pt. 4, *Postlethwait,* 189 W.Va. at 533, 432 S.E.2d at 803 ("A plaintiff is not precluded under W.Va.Code, 33–6–31(d) (1988), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.").

Although Ms. Cappelletti had settled just prior to trial with the underinsured motorist, a jury trial was held to establish both liability and damages. After hearing evidence proffered only on behalf of Ms. Cappelletti,[7] the jury found liability against the underinsured motorist, Mr. Thomas, and assessed damages at $600,000. The jury verdict in favor of the plaintiff, Ms. Cappelletti, and the accompanying award of damages, is necessarily a verdict against the underinsured motorist, Mr. Thomas.

Through its verdict, the jury resolved the issue of liability and damages. It was only when the circuit court entered the judgment order directly against the underinsurance carrier, that the issue about which Motorists complains arose. Because of the trial court's knowledge of the settlement agreement between Ms. Cappelletti and Mr. Thomas and his insurer, the court apparently decided that it could not properly enter judgment against Mr. Thomas.[8] In our opinion, however, under the circumstances of this case, the jury verdict form prepared by the jury effectively constituted a judgment against the uninsured motorist.[9]

As we stated in syllabus point fourteen of *State ex rel. Allstate Ins. Co. v. Karl,*

---

7. No evidence was offered on behalf of Mr. Thomas.

8. We do not address this issue.

9. Since the trial court retains the ultimate authority in entering a judgment, the actual judgment entered will not necessarily coincide with a jury verdict form. As this case demonstrates, the existence of a settlement agreement, which the jury is unaware of, may affect the amount of damages awarded in a judgment order.

190 W.Va. 176, 437 S.E.2d 749 (1993), *cert. denied*, — U.S. —, 114 S.Ct. 1302, 127 L.Ed.2d 653 (1994): "The language of W.Va. Code, 33–6–31(d) (1988), that allows an uninsured or underinsured motorist carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy." 190 W.Va. at 179, 437 S.E.2d at 752. Consistent with the objectives of West Virginia Code § 33–6–31(d), Motorists had the opportunity "to contest whether there was coverage under its policy" issued to Ms. Cappelletti's father.[10] *Morrison*, 192 W.Va. 303, 452 S.E.2d 394 (1994). As we explained at length in *Karl*, West Virginia Code § 33–6–31(d) does not give an underinsured carrier the right to control the litigation or to fully participate in the litigation. *See* 190 W.Va. at 181–85, 437 S.E.2d at 754–58. Furthermore, we "conclude[d] that an underinsured motorist carrier does not have a due process right to assume independent control of the defense of a tortfeasor who is represented by a liability carrier." *Id.* at 185, 437 S.E.2d at 758. In the event that its rights are not adequately protected as a result of "collusion between the plaintiff and the liability carrier or negligent handling of the defense," there are remedies available to an underinsurance carrier, as we outlined in *Karl. Id.* at 182, 437 S.E.2d at 755.

■ Since Motorists had the opportunity to raise defenses and chose not to do so, and since Motorists has not alleged collusion or negligent handling, it appears that Motorists' only real concern is evading the payment of policy proceeds.[11] As we held recently in syllabus point four of *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994), "[u]nder W.Va.Code, 33–6–31(b), an insurance carrier is statutorily required to pay to its insured, who has uninsured or underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the

owner or operator of an uninsured or underinsured motor vehicle." Were we to determine that because of the circuit court's decision to enter the judgment order directly against Motorists rather than against Mr. Thomas, that Motorists had no obligation to provide underinsurance coverage in the instant case, we would be choosing form over substance.

Moreover, in our *Postlethwait* decision, in which we held that a plaintiff who had settled with the tortfeasor's liability carrier and obtained from the uninsured/underinsured carrier a waiver of subrogation rights against the tortfeasor was not required to first institute suit against the tortfeasor before bringing suit against the uninsured/underinsured carrier, we anticipated the issue at hand, in stating:

> Indeed, the provisions of W.Va.Code, 33–6–31(d), would seem to indicate that where the suit is filed against the tortfeasor and a copy is served on the uninsured/underinsured carrier, the judgment against the tortfeasor would be binding upon the carrier under the doctrine of collateral estoppel, as set out in *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983).

189 W.Va. at 536, 432 S.E.2d at 806.

In this case, a judgment was clearly obtained by Mrs. Cappelletti against the tortfeasor. Given this establishment of liability, the trial court's entry of judgment in the form of an order assessing liability directly against Motorists properly addressed Motorists' obligation to pay underinsurance proceeds to Ms. Cappelletti pursuant to its contractual obligations. In response to Motorists' assertion that due process violations arose through the entry of an order against it when it was not a named party below, we recently explained:

> The insurer's liability is not dependent on it being a named party in a suit filed under W.Va.Code, 33–6–31(d). This statutory

---

10. No defenses were alleged by Motorists against Ms. Cappelletti in the West Virginia civil action. Only when it filed suit in Ohio, did Motorists challenge the issue of coverage.

11. Frequently, a recalcitrant insurer who refuses to extend payment for coverage that the insured

purchased succeeds only in creating law that will probably be disliked by the insurance industry in general. The wiser course for insurers is to pay policy proceeds when there are no valid defenses to their insured's claim.

procedure does not violate due process because the insurer is afforded notice of the suit and an opportunity to defend under the principles set out in *State ex rel. Allstate Insurance Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993).

Syl.Pt. 5, in part, *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994).

We also determined in syllabus point four of *Saseen* that:

> Under W.Va.Code, 33-6-31(b), an insurance carrier is statutorily required to pay to its insured, who has uninsured or underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle. W.Va.Code, 33-6-31(b).

192 W.Va. at 99, 450 S.E.2d at 796. This holding is controlled by our concurrent determination in *Saseen* that "[t]he statutory obligation of an insurer to pay under W.Va.Code, 33-6-31(b) is confined to the policy limits of the uninsured of underinsured motorist coverage." Syl.Pt. 5, in part, 192 W.Va. at 96, 450 S.E.2d at 793. Based on the statutory principles recognized in *Saseen* which obligate an underinsured carrier "to pay the insured all sums which he shall legally be entitled to recover," we conclude that, provided the underinsurance carrier has been properly served pursuant to West Virginia Code § 33-6-31(d) (1992) and no defenses to coverage were raised by the carrier, the absence of a judgment order entered directly against the underinsured motorist does not prevent entry of an order against the underinsurance carrier if liability of the underinsured motorist has been established. W.Va. Code § 33-6-31(b).

While not directly raised on appeal, we note that the entry of the judgment against Motorists should not have exceeded the amount of underinsurance coverage contracted for by Ms. Cappelletti's father, as this was not a bad faith proceeding.[12] *See Saseen*, 192 W.Va. 94, 450 S.E.2d 791, Syl.Pt. 6, in part ("where an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a good faith settlement within its policy limits"). From the petition filed in this case, it appears that Ms. Cappelletti's father had two policies which each provided underinsurance coverage in the amount of $250,000. The propriety of stacking these two policies was apparently only raised in the Ohio proceedings and not in the West Virginia proceedings. From the record below, we do not know whether the court examined the issue of total available underinsurance proceeds or just entered the judgment for the full amount, after offsetting the settlement amount, against Motorists. Since the latter appears to be the case, we instruct the court below to determine the exact amount of underinsurance proceeds and to reenter, if necessary, an order against Motorists on that basis.

Based on the foregoing, we grant the writ of prohibition requested by Motorists, but only for the express and sole purpose of permitting the Circuit Court of Ohio County to determine the amount of underinsurance coverage contracted for by Ms. Cappelletti's father with Motorists and further instruct the court to enter a new judgment order against Motorists for the corresponding amount of the underinsurance coverage.[13]

Writ granted as moulded.

**12.** Ms. Cappelletti filed a separate civil action in the Circuit Court of Ohio County on May 24, 1994, Civil Action No. 94-C-325, alleging bad faith against Motorists with regard to its handling of her claim for underinsurance in connection with the accident caused by Mr. Thomas. In that complaint, she alleges that she had two $250,000 underinsured motorists policies which could be stacked on the basis of no multi-vehicle discounts. Through that proceeding, which is presently pending, she seeks to recover the amount of the judgment order in civil action no. 90-C-547, as well as additional damages.

**13.** We disagree with Petitioner's contention that the order of the Court of Common Pleas of Belmont Ohio, finding no underinsurance coverage, is res judicata as to the issue before this Court. First, the judgment order entered by the West Virginia trial court was entered on March 30, 1992, and the Ohio judgment was not entered until October 13, 1993. Thus, the West Virginia judgment clearly predates the Ohio determination of no coverage. Second, if Motorists had a legitimate defense, such as lack of coverage due to failure to comply with policy conditions, such defenses should have been raised in the West

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

Virginia proceeding pursuant to West Virginia Code § 33–6–31(d) and not by forum shopping, as appears to be the case here.