KENTUCKY NATIONAL INSURANCE COMPANY, Appellant,

v.

**Gordon LESTER, Appellee.**

No. 1998–CA–000280–MR.

Court of Appeals of Kentucky.

March 19, 1999.

Discretionary Review Denied
by Supreme Court Sept. 15, 1999.

◼◼◼◼◼◼◼◼◼◼◼◼◼◼

William G. Francis, Prestonsburg, for Appellant.

David G. Vest, Lexington, for Appellee.

Before GARDNER, HUDDLESTON and JOHNSON, Judges.

## OPINION

JOHNSON, Judge:

Kentucky National Insurance Company (Kentucky National) has appealed from the judgment of the Floyd Circuit Court entered on December 3, 1997, which summarily determined that it was liable to its insured, Gordon Lester (Lester), under the terms of its contract to provide underinsured motorist (UIM) coverage, and from the trial court's order of January 13, 1998, denying its motion to alter, amend or vacate the summary judgment. We reverse and remand.

The facts necessary for a resolution of the issues in this appeal are not in dispute. On April 1, 1993, Lester was involved in a two-car accident in Floyd County, Kentucky, which caused him serious injuries.[1] Lester, a resident of West Virginia, was driving his own automobile at the time of the accident and was insured by Kentucky National. On March 28, 1994, Lester commenced this action by filing a complaint in

---

**1.** According to his answers to interrogatories, deposition testimony and medical records, Lester sustained multiple injuries in the collision, including a broken hip, a broken pelvis, five broken ribs, separation of the thoracic nerves along the left side of his spine, and ulceration of his stomach. Lester was re-quired to be hospitalized because of these injuries for over two months, and had to use a tube to feed himself and was confined to a wheelchair for over six months. The injuries have left him with permanent and serious impairments.

the Floyd Circuit Court against Cynthia Williams (Williams), the driver of the other vehicle involved in the collision. Williams, a Kentucky resident, was insured by Allstate Insurance Company (Allstate). Lester alleged that Williams was negligent in the operation of her vehicle and that as a result of her negligence, he sustained injuries for which he had already incurred medical expenses in excess of $125,000.

Williams denied that she was at fault in causing the accident and filed a counterclaim against Lester in which she alleged that the accident was caused by Lester. On May 31, 1995, Kentucky National, on Lester's behalf, filed an answer to the counterclaim and alleged that Williams' negligence was the "sole cause of the accident and damages complained of." Alternatively, the answer stated that Lester was "entitled to a determination of the comparative negligence of all the parties to this action in causing the alleged injuries to the defendant[ ]." [2]

On October 14, 1996, Allstate offered to settle Lester's claim against Williams for $25,000, the limits of its insured's liability policy. Kentucky National was advised of the offer and given the opportunity to "front" the limits pursuant to the procedure established in *Coots v. Allstate Insurance Company*, Ky., 853 S.W.2d 895 (1993), to protect a UIM carrier's subrogation rights. Kentucky National chose not to "front" Williams' settlement.[3] On April 19, 1997, Lester settled his claim against Williams for the limits of her liability policy and executed a release in favor of Williams and Allstate, which provides in part as follows:

I [Lester] understand said Payers [Williams and Allstate], by reason of agreeing to this compromise payment, neither admit nor deny liability of any sort, and said Payers have made no agreement or promise to do or omit to do any act or thing not herein set forth and I further understand that this Release is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown, including future developments thereof, in any way growing out of or connected to said accident.

On June 9, 1997, an agreed order was entered dismissing Lester's complaint against Williams with prejudice.[4]

In the meantime, in March 1997, Lester amended his complaint to join Kentucky National as a party defendant and to assert a claim against his insurer to recover UIM benefits. Kentucky National answered and raised numerous defenses to the claim, including its assertion that it was Lester who "was the sole cause of the accident and damages complained of." On August 1, 1997, Lester filed a second amended complaint to assert a claim

---

2. The record reveals there to be a considerable issue regarding fault. In his discovery deposition, Lester testified that he approached KY 80, came to a complete stop for over 30 seconds, and looked in both directions. He recalled observing Williams' vehicle coming down KY 80 on his left, that the vehicle's turn signal was on, and that the automobile appeared to be slowing down as if to turn. He pulled onto KY 80 and does not remember anything else that happened until he was being assisted by emergency personnel. Williams stated that she was traveling on KY 80, at or below the speed limit. She saw Lester's vehicle approaching the highway from a side road and assumed it would stop at the intersection. However, she stated that Lester did not stop, but pulled out in front of her, and that she was not able to prevent the collision. The police report also indicates that Lester pulled in front of Williams' vehicle from a secondary road.

3. Considering the significant issue concerning fault, the large amount of Lester's medical expenses, and the fact that Williams was a twenty-two-year-old student, Kentucky National probably did not consider its subrogation rights to be worth protecting under the circumstances.

4. Williams' counterclaim had already been dismissed by agreed order entered on December 9, 1996. The order does not reveal the terms of the agreement reached between Williams and Lester, but merely recites that an agreement had been reached.

against Kentucky National for the alleged breach of its "duty of good faith and fair dealing" as evidenced by its refusal to pay him UIM benefits "at a time when [Kentucky National] had sufficient information within its possession to conclude that [he] was rightfully entitled to said benefits."

Lester moved for summary judgment on the issue of Kentucky National's obligation to pay him $20,000, the limits of his policy for UIM coverage. Lester argued that Kentucky National "waived its opportunity" to insist on a finding that Williams was at fault by failing to "front" the money for Williams' settlement. In the alternative, Lester argued that Kentucky National was estopped from contesting his claim for UIM, as in part of its defense to Williams' counterclaim, Kentucky National had denied that Lester was negligent.

Kentucky National responded that Lester was not automatically entitled to UIM coverage and argued that it was entitled to a jury trial on the issue of comparative fault/negligence. It also argued that a "jury could easily find that [Lester] was 100% at fault/negligent." Kentucky National insisted that Lester's entitlement to UIM only "kick[ed] into play" after he had established Williams' status as a tortfeasor. As to Lester's estoppel argument, Kentucky National pointed out that its answer to Williams' counterclaim also included a comparative fault defense.

In its December 3, 1997 order which granted Lester's motion for summary judgment, the trial court concluded that "Lester's settlement with Williams for her policy limits for $25,000.00 place[d] Williams in the position of an "underinsured motorist" as [a] matter of law." In reaching this conclusion, the trial court relied upon the language in the "exhaustion clause" of the insurance contract which provided that Kentucky National would be liable after the tortfeasor's limits of liability " 'have been exhausted by payment of *judgements or settlements* [emphasis in original].' "

Kentucky National moved the trial court to alter, amend or vacate the summary judgment pursuant to Kentucky Rules of Civil Procedure (CR) 59.05. For the first time, Kentucky National argued that the law of West Virginia should apply to the resolution of the contract action. It argued that if West Virginia law were applied, Lester could not establish entitlement to UIM coverage until he had established the fact that Williams was a tortfeasor and liable to Lester for damages. It cited *State, ex rel. Motorists Mutual Insurance Company v. Broadwater*, 192 W.Va. 608, 453 S.E.2d 591 (1994), which also concerned the "enforceability of a judgment order entered directly against an underinsurance carrier in the absence of an initial judgment against the underinsured motorist due to pretrial settlement." *Id.*, 192 W.Va. at 610, 453 S.E.2d at 593. Like our Supreme Court's decision in *Coots supra*, the Court in *Broadwater* held that a judgment against the tortfeasor is not necessary to secure UIM benefits. "[W]e are not convinced that 'judgment' is in fact the operative term. Instead, it appears that the establishment of liability is the key prerequisite to permitting direct recovery against an underinsurance carrier." *Id.*, 192 W.Va. at 612, 453 S.E.2d at 595.

Kentucky National continued to insist that the trial court must try the tort action to determine who was at fault before taking any action on the contract claim. Lester responded that the law in both states required that insurance contracts be interpreted in favor of the insured and that the "magic words" of Kentucky National's policy allowed recovery of UIM upon "judgment or settlement." The CR 59.05 motion was denied and this appeal followed.[5]

■ Kentucky National first argues that this Court should decide the merits of the appeal with reference to West Virginia law. It relies upon *Bonnlander v. Leader*

---

5. Lester's bad faith claim is still pending in the Floyd Circuit Court.

*National Insurance Company,* Ky.App., 949 S.W.2d 618 (1996), a case in which this Court upheld the application of Indiana law by the trial court to issues relating to underinsurance coverage. The injured parties in *Bonnlander* were residents of Indiana, the policies providing UIM were sold and issued in Indiana and referenced Indiana law, and the vehicle in which the injured plaintiffs were riding, was licensed and garaged in Indiana. As in the case *sub judice,* the only contacts with Kentucky in *Bonnlander* were "that the accident occurred here and the tortfeasor resided here." *Id.* at 620. The facts in this case bearing on the choice of law issue are identical to those in *Bonnlander.* Accordingly, if we were persuaded that the law in West Virginia would require a different resolution of the merits of this appeal, we would not hesitate to decide the appeal with reference to that authority.

■ However, it is readily apparent that under the law of either state, summary judgment was inappropriate. It is settled in both jurisdictions that Lester was not required to obtain a "judgment" against Williams as a precondition to seeking UIM from Kentucky National. "UM [uninsured motorist] coverage exists without regard to whether the obligation of the tortfeasor can be reduced to judgment, and there is no logical way to explain UIM coverage differently." *Coots, supra,* 853 S.W.2d at 898. This is also the conclusion reached in *Broadwater. See, supra,* at 502. In both states there is a procedure established which requires the UIM carrier to be given notice of its insured's claim against an alleged tortfeasor, and which allows the carrier to intervene to protect its subrogation rights. *Coots,* 853 S.W.2d

at 902; W.Va.Code § 33–6–31(d).[6] In both states, the UIM carrier's right to subrogation is inferior to the plaintiff's right to settle for the tortfeasor's policy limits. *Coots,* 853 S.W.2d at 901. Likewise, in both states, a plaintiff's settlement with the alleged tortfeasor does not affect defenses the insurer can raise in a direct action against it to collect UIM coverage. *Broadwater,* 453 S.E.2d at 597.

■ Kentucky National has consistently contended that before its obligation to pay Lester is triggered, Lester must first establish that Williams was at fault in causing the accident. In its answer to the amended complaint and in its response to the motion for summary judgment, Kentucky National argued that it is entitled to raise defenses pertinent to the terms of its underinsured portion of its policy with Lester. The pertinent portion of the insurance policy reads as follows:

> We will pay compensatory damages which an "insured" is *legally entitled to recover* from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" where such coverage is indicated as applicable in the Schedule or in the Declarations because of:
>
> 1. "Bodily injury" sustained by an "insured" and caused by an accident; and
>
> 2. "Property damage" caused by an accident [emphasis added].
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle." *We will pay damages under this coverage caused by*

6. Kentucky National argues that the statutory scheme contained in West Virginia Code § 33–6–31(d) would have allowed it to participate in the defense and require "the tort action [to] proceed to finality before the contractual underinsured motorist benefits are to be considered for payment." However, the West Virginia courts have construed that provision to allow the UIM carrier to assume primary control of the defense only if the

liability insurance carrier of the alleged tortfeasor is "defending the claim in a bad faith manner." *State, ex rel. Allstate Insurance Company v. Karl,* 190 W.Va. 176, 183, 437 S.E.2d 749, 756 (1993). The statutory scheme is "primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy." *Id.,* 190 W.Va. at 186, 437 S.E.2d at 759.

*an accident* with an *"underinsured motor vehicle"* only after the limits of liability under any applicable liability bonds or policies have been exhausted *by payment of judgments or settlements* [emphases in original].

We agree with Kentucky National's argument that until Lester can show that he is "legally entitled to recover" from Williams, that is, until he proves that Williams was negligent and that her negligence caused his injuries, he is not entitled to a judgment under the policy. This prerequisite to coverage was clearly recognized in *Coots*, which states that while "proof the offending motorist is a tortfeasor and proof of the amount of damages caused by the offending motorist are not preconditions to coverage," such proof comprises "essential facts that must be proved before the insured can recover judgment in a lawsuit against the insurer on the contract of insurance." 853 S.W.2d at 899. Further, *Coots* also established that the mere exhaustion of the alleged tortfeasor's policy limits does not entitle one to recover from its UIM carrier without proof of fault.

> When the UIM statute speaks in terms of measuring the insurer's liability by "the judgment recovered against" the underinsured motorist, the intent of the language is no different when the UM statute speaks to the amount the insured is "legally entitled to recover ... from owners or operators of uninsured motor vehicles" as the measure of the insurer's liability....
>
> [T]he only rational interpretation of the statute is, while the policy limits specified in the tortfeasor's policy must be exhausted before the UIM carrier has an obligation to pay, the liability of the tortfeasor and the amount of damages sustained are elements that must be established in measuring the UIM carrier's obligation and not a statutory precondition to coverage.

*Id.*

Lester's argument that this interpretation of the policy was not "anticipated by the parties at the time of the making of the contract" is simply not tenable. The whole purpose for UIM in both West Virginia and Kentucky is to " 'compensate parties for injuries *caused* by other motorists who are underinsured.' " *Kronjaeger v. Buckeye Union Insurance Company,* 200 W.Va. 570, 490 S.E.2d 657, 666 (1997) (citation omitted) (emphasis added). UIM has never been intended to provide compensation to an insured for his own negligence.

■ Apparently, the trial court was of the opinion that Lester had established Williams' fault in causing the accident by virtue of their settlement agreement. However, the release executed by Lester specifically provided that he understood that neither Williams nor Allstate was thereby admitting liability and that they were settling to "avoid expense and terminate all controversy." It is settled in this jurisdiction that a voluntary payment in settling a claim is "not necessarily an admission" of liability. *Ashland Oil & Refining Company v. General Telephone Company,* Ky., 462 S.W.2d 190, 194 (1970). "Many disputed claims are settled for a variety of reasons without any admission of actual liability." *Id.See also Bottoms v. Bottom,* Ky.App., 880 S.W.2d 559 (1994).

■ Finally, Lester argues that Kentucky National is estopped from asserting he was at fault in causing the accident. This argument is predicated on the answer to Williams' counterclaim, prepared by counsel for Kentucky National on Lester's behalf, in which it was pled in the alternative that Williams' negligence was the sole cause of the accident. Relying on *Rowe v. Shepherd,* Ky., 283 S.W.2d 188 (1955), and *Center v. Stamper,* Ky., 318 S.W.2d 853 (1958), Lester insists that Kentucky National cannot change its position on the issue of fault as reflected in the answer prepared for Lester merely because its economic position has changed.

We find no merit to the argument that this pleading constituted a judicial admission binding on Kentucky National. "Pleading in the alternative is of course a standard legal practice, and absent extraordinary circumstances such alternative pleading is not binding as a judicial admission." *Huddleston, By and Through Lynch v. Hughes,* Ky.App., 843 S.W.2d 901, 904–905 (1992). More importantly, *Rowe* and *Center* both involve pleadings or admissions made by a party. Kentucky National was not a party to this litigation when it undertook to defend Lester. This distinction is critical.

Our customary reticence to apply the doctrine of judicial admissions is heightened in this case due to the lack of identity of parties. Ordinarily, a judicial admission is argued to have resulted from some statement or act *of a party* in the pending litigation or by such a statement or act in other litigation between *the same parties.* Here, the source of the claimed judicial admission is a separate lawsuit involving some, but not all, of the parties to this litigation. While a party's statement in one case was held to be conclusive against him in another case in *Center v. Stamper,* Ky., 318 S.W.2d 853 (1958), the parties and the underlying controversy were the same. Unless the circumstances and conditions virtually eliminate the possibility of error, "a judicial admission in one action is not conclusive in another action."

*Goldsmith v. Allied Building Components, Inc.,* Ky., 833 S.W.2d 378, 380 (1992) (citations omitted) (emphases added). Clearly, Kentucky National, in defending itself in a subsequent complaint by Lester, is not estopped from asserting policy defenses even though those defenses are inconsistent with the answer it prepared in Lester's defense in the original tort action at a time when it was not a party.

Because there is a factual issue as to who was at fault in causing the accident in which Lester was injured, summary judgment on the issue of Lester's entitlement to UIM benefits from Kentucky National was clearly inappropriate. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991). Accordingly, the judgment of the Floyd Circuit Court is reversed and this matter is remanded for further proceedings consistent with this Opinion.

All concur.